## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **RICHARD BAILEY**, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 97 C 7665 |
| | ) |
| **UNITED STATES OF AMERICA**, | ) |
| | ) |
| Respondent. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

On September 6, 2017 Richard Bailey ("Bailey"), in still another effort to attack the criminal sentence that this Court had imposed on him more than two decades ago, filed his Motion To Alter and Amend the August 22, 2017 Memorandum Order (the "Motion," Dkt. No. 59 in this civil case[1]). That 1995 sentence was based in material part on this Court's finding, by a preponderance of the evidence, that Bailey had engaged in a conspiracy to murder -- and had solicited the murder of -- Helen Vorhees Brach. In that respect Paragraph 37 of the RICO conspiracy charge in Count Two of the Bailey indictment (quoted in this Court's lengthy June 6, 1995 memorandum opinion and order, 892 F. Supp. 997, 1008-09 (N.D. Ill. 1995)) read:

> In 1977, RICHARD BAILEY and co-schemer A [who has now been identified in the course of the sentencing proceedings as Frank Jayne, Jr. ("Jayne")],

_____

[1] In accordance with this District Court's regular practice in dealing with prisoner-filed federal motions invoking 28 U.S.C. § 2255 ("Section 2255") to challenge federal convictions or sentences, a civil case number is assigned to the Section 2255 proceeding. That procedure avoids the possible confusion that might arise if the docket entry were made part of the often voluminous docket in the criminal case.

conspired to murder and solicited the murder of Helen Brach, in violation of Illinois Revised Statutes, Chapter 38, Sections 8-1and 8-2. Bailey stoutly denies any such involvement, which if proved by the United States would drive the applicable Guideline through the roof: In this instance Guideline § 2X1.1(a) (dealing with attempts, solicitation or conspiracy) looks to the base offense level for the substantive offense of murder, which under Guideline § 2A1.1 is a level 43. And level 43, even without reference to the possibility that any of the factors discussed earlier in this opinion would lead to an even higher offense level, is at the top of the sentencing table, calling for a sentence of life imprisonment without possibility of parole.

Initially this Court had considered commencing this opinion by returning to the point of beginning (its 1995 opinion referred to in the preceding paragraph, which was affirmed by our Court of Appeals in the following year, United States v. Bailey, 97 F.3d 982 (7th Cir. 1996)). But that path would be a lengthy one, and Bailey's (and his proxy Frank Amodeo's) repeated misleading attempts at revisionist history do not merit such treatment.

Instead this Court first refers to the Background section of the August 18, 2017 "Government's Response to Petitioner's Motion Under Rule 60(b) To Reopen § 2255 Proceedings" (Dkt. No. 57 in this civil case) for a brief account of Bailey's repeated -- and uniformly unsuccessful -- efforts to challenge his 1995 sentence to the extent that it was based on his complicity in Brach's murder. Some idea of Bailey's impermissible stretch of both fact and law may be gained from his distortion of an April 2005 Chicago Tribune newspaper article reporting a statement by one Joe Plemmons, an article that read in relevant part:

> But he says that he can't get away from his memories of the night candy heiress Helen Vorhees Brach was killed in 1977, her body incinerated as he looked on.
>
> The climactic scene of one of Chicago's most vexing murder mysteries has run through his mind over and over--and by his own account, he fired two gunshots into Brach's already battered body.
>
> After 28 years, Plemmons said he finished running from the Brach murder.

He told investigators what he says is the whole truth about who wanted Brach killed and how they made her vanish. Investigators remain divided over whether this account by Plemmons--a convicted con man who provides no corroboration--can ever lead to charges against him or anyone else.

Plemmons told his story to the Tribune last week in a Pennsylvania restaurant not far from his home, going public for the first time with his version of events that night. Over a cheeseburger, he said he fired a Brach on the order of a mod hit man who was pointing a double-barreled shotgun at his chest.

Plemmons said he believes Brach was already dead when he shot her, despite someone else saying he heard her moan.

He said Brach was killed because the horsemen who had cheated her for years feared she was finally on to them and was going to tell authorities.

That self-inculpatory statement ascribed to Plemmons is somehow sought to be converted by Bailey into proof of <u>his</u> actual innocence -- but that is absurd. No one has ever claimed that Bailey was a triggerman or was otherwise engaged in physical violence (that was the province of his coconspirator Frank Jayne, Jr. and other members of the Jaynes clan). Indeed, a vital portion of Plemmons' reported account ties in directly with, and actually corroborates, this Court's finding <u>against</u> Bailey as to the charged conspiracy relating to Brach's murder, for this Court's 1995 opinion confirms that Bailey was unquestionably one of the "horsemen who had cheated for years [and] feared she was finally on to them and was going to tell authorities" (see, e.g., 892 F. Supp. at 1010-14).[2]

---

[2] Just a brief note might be added about the part of Bailey's current submission that points to a lie detector test administered to him more than seven years ago. Plainly the examiner was misled into framing his questions in a way that addressed Bailey's (or Amodeo's) misconception that Bailey was charged with direct physical involvement in Brach's murder, for questions posed by the examiner were framed in terms of "Do you know for a fact who killed Helen Brach?" and "Did you kill Helen Brach?" and "Do you know what was done with Helen Brach's body?" and so on.

- 3 -

In brief summary, it simply will not do for Bailey (or Amodeo) to try to call on the Beckles case as performing some sort of miracle that has raised his claim, like Lazarus, from the dead. In dealing with one of the earlier efforts by Bailey (a motion filed in July 2012) to call Rule 60(b) to his aid, our Court of Appeals rejected that motion on April 9, 2013 in its Case No. 12-3400 because it had not been filed "within a reasonable time" as Rule 60(c)(1) requires (that motion was filed nearly 15 years after the dismissal of Bailey's original Section 2255 motion). Another four-plus years have since passed, and Bailey's current motion has not improved with age. It too is denied as untimely.

                                                                 Milton I. Shadur
                                                                 Senior United States District Judge

Date: September 28, 2017